IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Orlando Division

Case No.: 6:20-1603

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| | ) COMPLAINT |
| Plaintiff, | ) ) |
| | ) JURY TRIAL DEMANDED |
| vs. | ) ) ) |
| ASPIRE HEALTH PARTNERS, INC. | ) ) ) |
| Defendant. | ) ) ) ) |

**PLAINTIFF UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S COMPLAINT AND DEMAND FOR JURY TRIAL
[INJUNCTIVE RELIEF REQUESTED]**

This is an action under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), as amended by the Americans with Disabilities Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat 3553 (2008) (codified as amended in scattered sections of 42 U.S.C.), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to the Charging Party Henrietta Tice, who was adversely affected by such practices. Plaintiff the United States Equal Employment Opportunity Commission alleges that Defendant Aspire Health Partners, Inc. ("Aspire") discriminated against Ms. Tice by

1

failing to hire her because of her disability and through its use of prior disabilities in workers' compensation claims as a qualification standard and/or selection criteria for hire.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference 706(f)(l) and (3) of Title VII of the Civil Rights Act of 1964, and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida, Orlando Division.

## PARTIES

3. The EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(l) and (3).

4. At all relevant times, Aspire has continuously been a not-for-profit corporation doing business in the State of Florida and has continuously had at least fifteen (15) employees.

5. At all relevant times, Aspire has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 101(5) and 101(7) of the ADA,

42 U.S.C. § 12111(5), (7), which incorporates by reference 42 U.S.C. § 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e-l(b), (g) and (h).

6. At all relevant times, Aspire has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEEDINGS

7. More than thirty days prior to the institution of this lawsuit, Ms. Tice filed a charge with the EEOC alleging that Aspire violated the ADA by discriminating against her on the basis of disability.

8. Prior to the institution of this lawsuit, the EEOC issued a Letter of Determination to Aspire finding reasonable cause to believe that Aspire discriminated against Tice in violation of the ADA. The Letter of Determination invited Aspire to join with the EEOC in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9. Prior to the institution of this lawsuit, the EEOC issued to Aspire a Notice of Failure of Conciliation advising Aspire that the EEOC was unable to secure from Aspire a conciliation agreement acceptable to the EEOC.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

11. Aspire is a non-profit behavioral healthcare organization headquartered in Orlando, Florida.

12. Ms. Tice began working for Aspire in or around 1993.

13. As part of her work at Aspire, Ms. Tice developed and launched the Village House Program. Under this program, volunteer "Village House hosts" open their homes to serve as gathering places and safe houses for the children within a neighborhood. Ms. Tice served as the program manager for Aspire's Village House Program and received awards for her work.

14. In or around 2012, while Ms. Tice was working, a projector screen fell onto her as she was collecting supplies from Aspire's warehouse. Ms. Tice suffered from a partial rotator cuff tear and filed a workers' compensation claim. Notwithstanding the injury, Ms. Tice continued working for Aspire.

15. In or around February 2015, because a doctor restricted Ms. Tice from using her left arm due to her 2012 workplace injury, Ms. Tice began medical leave. Ms. Tice underwent shoulder surgery to repair the partial rotator cuff tear in or around July 2015.

16. In or around September 2015, while she was still recovering from surgery, Aspire discharged Ms. Tice because she had exhausted her medical leave. Ms. Tice's discharge letter states, "In the future, if you qualify to meet the physical requirements for a job vacancy at Aspire, feel free to apply since you are eligible to rehire."

17. Ms. Tice's doctor cleared her to work without physical restrictions in or around October 2015.

18. In or around early August 2018, Ms. Tice learned that there was an opening for a position as a prevention specialist in Aspire's Village House Program. Ms. Tice contacted the program manager of the Village House Program and indicated that she would

be interested in filling that role. The program manager scheduled an interview for Ms. Tice on August 15, 2018.

19. The day before the interview, because he was aware Ms. Tice had a former workers' compensation claim, the program manager reached out to Aspire's human resources department to verify that Ms. Tice was eligible to be rehired.

20. A human resources representative then looked through Ms. Tice's workers' compensation claim records, saw that Ms. Tice was previously deemed disabled in 2015, and reported to the program manager on August 15, 2018, a few hours before Ms. Tice's interview, that "[p]er discussion . . . regarding Ms. Tice's W[orkers' ]C[ompensation] case upon departure – the rehire status remains no."

21. Based on the e-mail received from human resources, the program manager cancelled the interview with Ms. Tice and explained to her that she was not eligible for rehire.

22. Ms. Tice reached out to Aspire's Chief Operating Officer to find out why Aspire said she was ineligible for rehire when her termination letter stated the opposite. The COO promised to look into the issue, but never got back to Ms. Tice.

23. Because of the medical records in her previous workers' compensation claim, Aspire never interviewed Ms. Tice for the prevention specialist position.

24. Aspire did not hire Ms. Tice for the prevention specialist position.

25. In August 2018, when Ms. Tice sought and was denied the prevention specialist position, she was physically able to perform all the functions and responsibilities of that position.

26. Ms. Tice was more qualified for the prevention specialist position than the individual selected, as Ms. Tice created and oversaw the Village Housing Program for over a decade. Moreover, the individual selected did not have a prior workers' compensation claim with Aspire.

27. As a result of Aspire failing to hire her, Ms. Tice suffered damages.

## STATEMENT OF CLAIMS

### COUNT I

28. Paragraphs 11 through 27 are incorporated herein.

29. Ms. Tice is an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(1)). Specifically, she has a record of disability and/or was regarded as disabled by Aspire.

30. Ms. Tice was qualified for the position as Village House Program prevention specialist at all relevant times.

31. Aspire discriminated against Ms. Tice in violation of 42 U.S.C. § 12112(a), as amended, by failing to hire Ms. Tice on the basis of her disability.

32. The effect of the practices complained of in paragraphs 11 through 27 above has been to deprive Charging Party Henrietta Tice of equal employment opportunities and otherwise adversely affect her status as an applicant for employment because of her disability.

33. The unlawful practices complained of in paragraphs 11 through 27 were intentional and caused Charging Party Henrietta Tice to suffer emotional distress including,

but not limited to, emotional pain, suffering, humiliation, inconvenience, loss of enjoyment of life, and/or physical damages.

34. The unlawful practices complained of in paragraphs 11 through 27 were done intentionally and with malice or with reckless indifference to the federally protected rights of Charging Party Henrietta Tice.

## COUNT II

35. Paragraphs 11 through 27 are incorporated herein.

36. Aspire uses prior disabilities in workers' compensation claims as a qualification standard and/or selection criteria in violation of Section 102(b)(6) of the ADA, 42 U.S.C. § 12112(b)(6).

37. The effect of the practices complained of in paragraphs 11 through 27 above is to screen out qualified individuals with a disability such as Ms. Tice.

38. The unlawful practices complained of in paragraphs 11 through 27 were intentional and caused Charging Party Henrietta Tice to suffer emotional distress including, but not limited to, emotional pain, suffering, humiliation, inconvenience, loss of enjoyment of life, and/or physical damages.

39. The unlawful practices complained of in paragraphs 11 through 27 done intentionally and with malice or with reckless indifference to the federally protected rights of Charging Party Henrietta Tice.

## **PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

      A.      Declare that Aspire violated the ADA by discriminating against Charging Party Henrietta Tice based on her disability;

      B.      Grant a permanent injunction enjoining Aspire, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from making employment decisions (including hiring, firing, demoting, and promoting) on the basis of disability.

      C.      Order Aspire to institute and carry out policies, practices, and programs which provide equal employment opportunities for disabled employees and which eradicate the effects of its past and present unlawful employment practices;

      D.      Order Aspire to institute a training program for all human resources personnel and hiring officials to ensure compliance with federal laws and company policies on nondiscrimination in employment decisions;

      E.      Order Aspire to make whole Charging Party Henrietta Tice who was not hired on the basis of her disability, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and all other affirmative relief necessary to eradicate the effects of these unlawful employment practices including, but not limited to, reinstatement of Ms. Tice into the prevention specialist position or front pay in lieu thereof;

      F.      Order Aspire to make whole Charging Party Henrietta Tice by providing compensation for past and future pecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, job search expenses and the like, in amounts to be determined at trial;

G.   Order Aspire to make whole Charging Party Henrietta Tice by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional and/or physical pain, suffering and mental anguish, humiliation, loss of enjoyment of life, and the like, in amounts to be determined at trial;

H.   Order Aspire to pay Charging Party Henrietta Tice punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

I.   Grant such further relief as the Court deems necessary and proper in the public interest; and

J.   Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: September 1, 2020

Respectfully Submitted,

SHARON FAST GUSTAFSON
General Counsel

ROBERT A. CANINO
Acting Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. Equal Employment
Opportunity Commission
131 M Street, N.E.
Washington, D.C. 20507

ROBERT E. WEISBERG
Regional Attorney
Florida Bar No: 285676
Email: robert.weisberg@eeoc.gov

KRISTEN FOSLID
Supervisory Trial Attorney
Florida Bar No: 0688681
Email: kristen.foslid@eeoc.gov

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Miami District Office
Miami Tower
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131

/s/ *Chelsae Johansen Ford*
CHELSAE JOHANSEN FORD
Trial Attorney
Florida Bar No. 106029
Email: Chelsae.Ford@eeoc.gov

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Tampa Field Office
501 E. Polk Street, Suite 1000
Tampa, FL 33602
Tel: 813.202.7929